Mac TAYLOR *v.* STATE of Arkansas

CR 89-74                                    773 S.W.2d 431

Supreme Court of Arkansas
Opinion delivered July 3, 1989

*Mark W. Corley*, for appellant.

*Steve Clark*, Att'y Gen., by: *David B. Eberhard*, Asst. Att'y Gen., for appellee.

DAVID NEWBERN, Justice. Mac Taylor, the appellant, was convicted of driving a truck in violation of the statute governing vehicle weight. He contends he was prosecuted for violation of having an overweight set of tandem axles but that the state failed to prove his axles were in tandem because there was no proof of the distance between the axles. The trial court denied Taylor's directed verdict motion after noting at least one axle was overweight whether it was considered part of a tandem or not. We affirm because the trial court was right in refusing to direct a verdict in Taylor's favor.

The information pursuant to which Taylor was prosecuted charged him with the crime of "Violation of Single & Tand[e]m Axle Loa[d] Limit - Unclassified Misdemeanor 27-35-203(b) (75-817(b)). . . ." The number 27-35-203(b) refers to that section of the Arkansas Code of 1987 Annotated (Supp. 1987). The number appearing in parentheses, 75-817(b), refers to the predecessor statute in Arkansas Statutes Annotated.

Section 27-35-203(b)(1) provides:

> The total gross load imposed on the highway by two (2) consecutive axles in tandem articulated from a common attachment or individually attached to the vehicle, and spaced not less than forty inches (40") nor more than ninety-six inches (96") apart, shall not exceed thirty-four thousand pounds (34,000 lbs.).

Section 27-35-203(b)(2) provides that "[n]o one (1) axle of any

such group of two (2) consecutive axles shall exceed the load permitted for a single axle."

Two police officers who were at the scene of the alleged violation testified that trailer axles were tandem axles and they were overweight. At the conclusion of the evidence, counsel for Mr. Taylor moved for a directed verdict on the ground that there had been no proof that the axles were within the distances stated in § 27-35-203(b)(1). The judge noted that subsection (b)(2) required that "no one axle of any such group of two consecutive axles shall exceed the load permitted for a single axle."

■ The evidence showed there were two tandem or consecutive axles on Taylor's rig which, together, weighed 41,500 pounds. There is no way to divide that figure without concluding that one axle was in excess of 20,000 pounds, which is the maximum for a single axle as provided in Ark. Code Ann. § 27-35-203(a). It was not necessary to charge the defendant under § 27-35-203(a) to find him guilty of having a single axle over 20,000 pounds, however, as that is the offense chargeable, and in this case charged, under subsection (b) which includes subsection (b)(2).

Affirmed.

HICKMAN, J., concurring.

PURTLE and GLAZE, JJ., dissenting.

TOM GLAZE, Justice, dissenting. The majority opinion should add a caveat: "Look out, brother trucker — due process, when driving on Arkansas highways, has been eliminated and it may prove unusually hazardous to your pocketbook!"

In reading the majority decision, one might muse on what occurred in this matter and conclude that this is a "nothing case." Not so. First, this case is the first to involve the interpretation of Arkansas's load limit or "overweight" laws for trucks. Second, the majority court's interpretation of these laws permits the state to cite or charge a trucker for one weight violation under the law and, without notice or an opportunity to defend against it, to convict him of another. The facts, I believe, speak for themselves.

I. CITATION OR CHARGE — VIOLATION OF ARK.

STAT. ANN. § 75-817(g) (SUPP. 1985) [NOW ARK. CODE ANN. § 27-35-203(g) (Supp. 1987)].

The following overload citation was given the defendant trucker on May 21, 1987:

In sum, the citation notified that the defendant trucker's vehicle — a logging truck — weighed 51,700 pounds and the legal limit was 46,000 pounds. Section 75-817(g), the law under which the trucker was first charged, concerned vehicles with five axles hauling, among other things, forest products; this law allows an eight percent (8%) variance above the applicable gross weight limit set out by law for such vehicles.

## II. PRELIMINARY HEARING

The information filed by the state against the trucker failed to mention §§ 75-817(g) or 27-35-203(g), but instead accused the trucker of violating Ark. Stat. Ann. § 75-817(b), now Ark. Code Ann. § 27-35-203(b). Actually, subsection (b) contains two sections which read as follows:

(b) MAXIMUM TANDEM-AXLE LOAD. (1) The total gross load imposed on the highway by two (2) consecutive axles in tandem articulated from a common attachment or individually attached to the vehicle, and spaced not less than forty inches (40") nor more than ninety-six inches (96") apart, shall not exceed thirty-four thousand pounds (34,000 lbs.).

(2) No one (1) axle of any such group of two (2) consecutive axles shall exceed the load permitted for a single axle.

Because of the switch in the charges against the trucker, the trial court, the state, and the defendant's counsel, Mr. Corley, were confused as to which charge was in issue. At a preliminary hearing, Corley contended the defendant was not guilty of violating subsection 203(g) because his truck did not have the five axles required under that provision. The state then stated it wished to amend its information to show the defendant violated § 27-35-203, thus omitting reference to any subsection. Corley responded, pointing out that the law cited by the state set out various different violations by subsections and each violation contained different elements of proof. In his remarks, Corley identified three different statutory provisions (subsections) under which the state could bring charges and which required different elements of proof, *viz.*, (1) subsection 203(g) (requires five axles

and allows a variance in weight); (2) subsection 203(b)(1) (requires two consecutive axles in tandem spaced not less than forty inches nor more than ninety-six inches apart); and (3) subsection 203(b)(2) (requires that no one (1) axle of two (2) consecutive axles shall exceed the 20,000 pounds specifically set out in subsection 203(a)). This third statutory violation, contained in 203(a) and (b)(2), allows a violator, under subsection 203(h), the option to shift or to unload a portion of the existing overload if the total weight of all axles, including the steering axle, does not exceed the total maximum weight allowed by law — in this case 52,000 pounds.

At the end of the pretrial hearing, the trial judge instructed the state to amend its information. At trial time, the state's amended information reflects the state charged the defendant with subsection 203(b). The information never mentioned the original charge under subsection 203(g), nor did it specify which section, (1) or (2), which the defendant was alleged to have violated under subsection (b).

## III. THE TRIAL

Immediately before trial, the defendant's counsel again complained that the state had failed to specify which law the defendant violated; accordingly, counsel requested the state's amended information be dismissed. After discussion between the court and the state's attorney, an understanding was reached between the two that the state would show the defendant's vehicle exceeded the weight limit required for tandem axles, which is provided under subsection 203(b)(1). The state's attorney explained that his proof would show defendant's vehicle weighed 51,700 pounds when he was limited to 34,000 pounds on his tandem axles and 12,000 pounds for his vehicle's front or steering axle — which totals 46,000 pounds. Of course, this 46,000 pound limit required under subsection 203(b)(1) seems to match up what the arresting officer originally cited the trucker, although the officer specified subsection 203(g). Nonetheless, the state's case at trial dealt *entirely* with showing how the defendant's vehicle violated the weight limits under subsection 203(b)(1). The state, however, failed to make its case because it did not prove the defendant's truck's axles were spaced not less than the forty inches nor more than the ninety-six inches apart required under

subsection 203(b)(1). The state concedes no such proof was offered. Defendant's counsel moved for directed verdict, which the trial court denied. In denying counsel's motion, the trial court, without mentioning subsection 203(b)(2), made reference to that subsection's statutory requirements and language and asked defendant's counsel, Corley, if the state proved its case under that provision. Corley opined the state had not, at which point, the court curiously responded by saying, "They testified that the *tandem axle* was overloaded" — a clear reference to the subsection 203(b)(1) provision, not the subsection 203(b)(2) provision it had just mentioned.

Regardless of whether the trial court actually knew which law it found violated by the defendant, it is clear that the *only* reference to the subsection 203(b)(2) provision was made by the trial court *after* both the state and the defendant rested.

## IV. THIS APPEAL

In this appeal, the state makes no attempt to justify or sustain its case by arguing its evidence was sufficient to prove the defendant violated the statutory terms in subsection 203(b)(2). I commend the state for its straightforwardness in this respect since the state had *never even* hinted it was trying defendant for having violated that statutory provision. The state, instead, argues that its failure below to show the space measurement requirement under subsection 203(b)(1) was not fatal because the requirement was merely directive. The argument is meritless, which the majority recognizes by its having wholly ignored the argument when writing the majority opinion.

After ignoring the trust of the state's entire case and argument, the majority court, in its zeal to affirm the trial court's decision, states that it was unnecessary to charge the defendant under subsection 203(a) or subsection 203(b)(2) because the chargeable offense was includable under subsection 203(b) — the section mentioned in the state's amended information. Such logic escapes me. Surely, the defendant is entitled to know the specific crime with which he is charged. Subsections 203(a), (b)(2), (b)(1) and (g) are separate offenses; they require different elements of proof and the defendant is entitled to raise different defenses, depending upon which violation is alleged. As alluded to

earlier, the defendant should have been given the opportunity to shift or unload a portion of the existing load, if he had been charged with having violated the offense set out in subsections 203(a) and (b)(2) — the offense which the majority now convicts him of. *See* subsection 203(h). Certainly, the defendant could have availed himself of the 203(h) defense if he had been denied the option to rearrange or remove his cargo.

Of course, the officer who stopped and charged the defendant had no intention of charging him with having violated the 20,000 pound axle requirement specified under subsections 203(a) and (b)(2). As a consequence, I have no doubt the officer never offered the defendant the required opportunity to shift or remove some of his cargo so as to comply with those provisions. Instead, the officer charged defendant with having violated the tandem axle provision of subsection 203(b)(1), and the state simply failed to prove the elements under that provision. This court's decision not only ignores the state's failure to prove its case, it also ignores the defendant's constitutional due process rights that allow him to be notified of the specific crime with which he is charged and the opportunity to defend against it.

If the majority opinion is an indication of how this court will interpret this state's vehicle weight load statutes in the future, truckers had best plan to by-pass Arkansas and do most of their hauling in or through Missouri or Texas. I, of course, would reverse and dismiss the case.

PURTLE, J., joins in this dissent.